UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ALBERTO GARCIA, et al.,

                     Plaintiffs,

     -against-

CHIRPING CHICKEN NYC, INC., et al.,

                     Defendant.

----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
15 CV 2335 (JBW) (CLP)

**POLLAK**, United States Magistrate Judge:

       On April 23, 2015, plaintiffs Alberto Garcia and Armando Morales Hernandez commenced this action against defendants Chirping Chicken NYC, Inc., Chirping Chicken USA, Inc., and Ramji Dass, seeking unpaid overtime and minimum wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL") § 650 et seq., as well as unpaid spread of hours wages, and damages stemming from defendants' alleged failure to comply with the wage notice requirements under the NYLL. After defendants failed to answer or otherwise respond to the Complaint for several months, plaintiffs requested entry of a certificate of default on July 9, 2015. On July 10, 2015, the Clerk of Court entered a certificate of default against all defendants. Thereafter, on September 1, 2015, plaintiffs moved for a default judgment against all defendants. On December 17, 2015, the motion was referred to the undersigned to conduct an inquest and issue a Report and Recommendation as to damages. The Court held an inquest hearing on February 4, 2016, at which both plaintiffs testified; defendants did not appear.

       For the reasons set forth below, the Court respectfully recommends that the motion for

default judgment be granted, and that all defendants be held jointly and severally liable for $228,697.69 in damages and interest owed to plaintiff Garcia, $146,307.24 in damages and interest owed to plaintiff Hernandez, and for attorneys' fees and costs of $9,470.50.

FACTUAL BACKGROUND

Defendants Chirping Chicken NYC, Inc. and Chirping Chicken USA, Inc. (together, the "Chirping Chicken defendants") are two corporations in the food services business, organized and existing under the laws of the State of New York, with a common principal place of business located at 31-10 23rd Avenue, Astoria, N.Y. 11105 and/or 3015 Broadway, Astoria, N.Y. 11106.[1] (Compl.[2] ¶¶ 10, 11; see also Compl. Exs. B, C). Defendant Ramji Dass is alleged to be an officer, director, and/or owner of the Chirping Chicken defendants. (Compl. ¶ 12).

Plaintiffs Alberto Garcia and Armando Morales Hernandez are both residents of the State of New York who began working for defendants at different times and in various capacities. (Id. ¶¶ 8, 9). According to the Complaint, Alberto Garcia worked "primarily in the kitchen and also as a delivery person from March 17, 2009" to the date of the Complaint. (Id. ¶ 17). For this work, the Complaint alleges that Garcia received a flat weekly rate of approximately $230 to $360 in cash. (Id. ¶ 19). At the February 4th inquest hearing, Garcia testified that when he began working for the defendants in 2009, he was paid $230 per week in cash. (Tr.[3] at 8:25; see also

---

[1]At the inquest hearing held before the undersigned on February 4, 2016, plaintiffs clarified that the Chirping Chicken defendants operate a restaurant located at 3015 Broadway.

[2]Citations to "Compl." refer to the Complaint filed by plaintiffs on April 23, 2015.

[3]Citations to "Tr." refer to the transcript of the inquest hearing held before the undersigned on February 4, 2016.

2

Compl. ¶ 19).  Garcia further testified that during this period, he worked six days a week, beginning at 10:30 a.m. and ending at 11:00 p.m., with a half hour lunch break.  (Tr. at 9:5-12; but see Compl. ¶ 18 (alleging that he worked from 10:30 a.m. to 11:00 p.m., but "without a break")).  Approximately three years after Garcia started working for the defendants, he received a wage increase to $360 per week.  (Tr. at 9:1-2).  He testified that he was paid on Mondays, in cash, and received no other wages from his employment.  (Id. at 9:10-17; see also Compl. ¶ 26).

The Complaint alleges that Armando Morales Hernandez worked "primarily in as [sic] a cook and also as a cleaner from May 2008" to the date of the Complaint.  (Compl. ¶ 20).  For this work, Hernandez received a flat weekly rate of approximately $600 to $650 in cash.  (Id. ¶ 22).  During the inquest, Hernandez testified that when he first started working, he was paid $600 a week, for 6 days of work.  (Tr. at 12:8-12).  He testified that his hours were from 10:30 a.m. to 11:00 p.m., and that he received a thirty-minute lunch break  (Id. at 13:5-7; see also Hernandez Decl.[4] ¶ 9; but see Compl. ¶ 21 (alleging that he worked these hours "without a break")).  After three years of working for the defendants, Hernandez's wages were increased to $620 an hour and then in 2013, they went to $650 an hour.  (Id. at 13:15-14:2).   Like Garcia, Hernandez testified that he was paid in cash and received no other pay.  (Id. at 12:7; see also Compl. ¶ 26).

Both plaintiffs testified that defendant Dass was the owner of the Chirping Chicken defendants — the "boss," who hired them, gave them their work schedules, and assigned them their duties.  (Id. at 9:18-10:3; 14:17-15:4).  They confirmed the allegations in the Complaint that Dass "dominated the day-to-day operating decisions" of the Chirping Chicken defendants:  he

---

[4]Citations to "Hernandez Decl." refer to the Declaration of Armando Morales Hernandez, dated August 28, 2015, submitted in support of the plaintiffs' motion for default judgment.

had the power to hire and fire employees, supervise and control employee work schedules or conditions of employment, determine the rate and payment method for employees, and maintain employment records.  (Compl. ¶¶ 30-31).

In the Complaint, plaintiffs allege that, beginning in April 2009, defendants regularly required plaintiffs to work more than 40 hours per week and more than 10 hours per day.  (Id. ¶¶ 3-4).  As a result, plaintiffs claim they often did not receive minimum wages for the first 40 hours worked each week in violation of the FLSA[5] (First Cause of Action), nor did they receive overtime for any additional hours worked, in violation of the FLSA (Second Cause of Action), and in violation of the NYLL (Third Cause of Action).  (Id. ¶¶ 27-28).  Further, plaintiffs allege that defendants failed to pay spread of hours compensation for the days they worked more than ten hours per day, in violation of the NYLL (Fourth Cause of Action), and that defendants failed to provide pay stubs along with the cash payments for each pay period plaintiffs worked in violation of the NYLL (Fifth Cause of Action).  (Id. ¶ 5).  These decisions, plaintiffs claim, were the result of a formal practice instituted by Dass.  (Id. ¶ 6).

PROCEDURAL BACKGROUND

On April 23, 2015, plaintiffs filed this action.  The Chirping Chicken defendants were served on April 27, 2015.  (See Docket Nos. 7, 8).  Defendant Dass was served on May 5, 2015.  (See Docket No. 9).  On July 9, 2015, after none of the defendants had responded to the

---

[5]The Court notes that the Complaint does not contain any claimed minimum wage violations under the NYLL.  The Court further notes that in the Plaintiffs' Memorandum in Support of Default Judgment, dated September 1, 2015 ("Pls.' Mem.") at 6, plaintiffs appear to be seeking damages for minimum wage violations under the FLSA only insofar as they relate to plaintiff Garcia.

4

Complaint, plaintiffs requested entry of a certificate of default against all defendants.  The Clerk of Court entered default against all defendants on July 10, 2015.  Plaintiffs filed the instant motion for default judgment on September 1, 2015.

On December 17, 2015, the Honorable Jack B. Weinstein referred the motion to the undersigned to conduct an inquest and prepare a Report and Recommendation as to the motion.  Supplemental briefing was filed on January 13, 2016, and an inquest hearing was held on February 4, 2016.  As such, the Court makes its recommendations based on the documents filed in conjunction with the initial motion for default judgment, the supplemental briefing provided, and the testimony provided at the inquest hearing.


<u>DISCUSSION</u>

I.  <u>Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment.  <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  <u>See</u> <u>id.</u>; FED. R. CIV. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  <u>See</u> FED. R. CIV. P. 55(b).

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it

should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).

While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in

disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it

has held that the district court must balance that interest with its responsibility to "[afford]

litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.

Thus, in light of the "oft-stated preference for resolving disputes on the merits," default

judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting

party. Id. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply

because a defendant is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp.

160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme

care to avoid miscarriages of justice").

   The Court has significant discretion to consider a number of factors in deciding whether

to grant a default judgment, including:  (1) whether the grounds for default are clearly

established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants

on notice, see FED. R. CIV. P. 54(c) (stating "[a] default judgment must not differ in kind from, or

exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d

at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5

(E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that

accrued during the pendency of a litigation, so long as the complaint put the defendant on notice

that the plaintiff may seek such damages); and (3) the amount of money potentially involved –

the more money involved, the less justification for entering the default judgment.  Hirsch v.

Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).

Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant[s]." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. Id. Thus, the plaintiff must first establish the defendant's liability as a matter of law, for a defaulting defendant is not considered to have admitted to any legal conclusions. Advanced Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013). It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish the defendant's liability on each cause of action asserted. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). In doing so, however, the Court draws all "reasonable inferences from the evidence offered" in plaintiff's favor. Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

After demonstrating the defendant's liability, the plaintiff must also establish his or her entitlement to damages to a "reasonable certainty." Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988)

(collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989). In the context of a default judgment brought for violations of the FLSA and the NYLL, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d at 84-84.

## II. Liability

Plaintiffs' Complaint contains five causes of actions seeking the following: (1) unpaid minimum wages under the FLSA; (2) unpaid overtime wages under the FLSA; (3) unpaid overtime wages under the NYLL; (4) unpaid spread of hours wages under the NYLL; and (5) damages flowing from pay stub violations under the NYLL. The extent to which plaintiffs can recover damages for these claims hinges on their ability to demonstrate the applicability of the FLSA and the timeliness of plaintiffs' claims. Further, the extent to which plaintiffs can recover against all three defendants depends on whether the Chirping Chicken defendants constitute a "single employer" under the law. All three issues are addressed below.

### A. Applicability of the FLSA and the NYLL

#### 1. FLSA

To establish a claim under the FLSA, plaintiffs must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the plaintiffs are "employees" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 295 (1985)).

8

a.  Employer Subject to FLSA

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of
> goods for commerce, or that has employees handling, selling,
> or otherwise working on goods or materials that have been
> moved in or produced for commerce by any person; and . . .
> [whose] annual gross volume of sales made or business done is
> not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i)-(ii).  An employer is subject to both the minimum wage and overtime provisions of the FLSA if either:  (1) their employees are "engaged in commerce" or (2) the employer is an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207; see also Padilla v. Manlapaz, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009).  The statute defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  These two methods of establishing FLSA coverage are known as "individual coverage" and "enterprise coverage," respectively.  Jacobs v. New York Foundling Hosp., 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007).

Individual coverage is established where the employees themselves are "engaged in commerce."  In determining whether this is the case, courts examine the employment actions of each employee asserting a claim.  Padilla v. Manlapaz, 643 F. Supp. 2d at 300.  Enterprise coverage, on the other hand, exists where an employer:  (1) has employees engaged in commerce or in the production of goods for commerce; and (2) has an annual gross volume of sales greater than $500,000.00.  29 U.S.C. § 203(s)(1)(A).

Here, plaintiffs allege that "[d]efendants engage in interstate commerce, produce goods

9

for interstate commerce, or handle, sell, or work on goods or materials that have been moved in or produced for interstate commerce." (Compl. ¶ 34). Plaintiffs have further alleged that "[d]efendants' annual gross volume of sales made or business done is not less than $500,000." (Id. ¶ 33). In addition, plaintiffs have submitted declarations stating that they each handled goods and products that were moved in interstate commerce. (Garcia Decl.[6] ¶¶ 6, 7; Hernandez Decl. ¶¶ 6, 7). Thus, plaintiffs allege that the Chirping Chicken defendants were, at the relevant times, employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA. (Id.)

In the context of a default under the FLSA, courts do not require any additional factual allegations to establish enterprise coverage. See, e.g., Fermin v. Las Delicias Peruanas Restaurant Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. Mar. 19, 2015) (finding a complaint which simply restated the statutory definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State"). Thus, taking these allegations as true, as the Court must in the context of a default, the Court finds that plaintiffs have established that the Chirping Chicken defendants qualify as employers under the FLSA.

As for defendant Dass, plaintiffs allege that during the relevant period of time, Dass was the owner or principal of both Chirping Chicken defendants, and that he had the power to set plaintiffs' rate of pay, their work schedules, job duties, and all terms and conditions of plaintiffs' employment. (Compl. ¶¶ 30-32; Garcia Decl. ¶¶ 2-4; Hernandez Decl. ¶¶ 2-4). Under the FLSA,

---

[6]Citations to "Garcia Decl." refer to the Declaration of Alberto Garcia, dated August 28, 2015, submitted in support of the plaintiffs' motion for default judgment.

an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  An individual may be liable as an employer under the FLSA so long as he exercises "operational control" over the employee in question.  See Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013), and individuals who are found to be "employers" under the FLSA may be held jointly and severally liable to the plaintiff.  Moon v. Kwon, 248 F. Supp. 2d, 201, 237 (S.D.N.Y. 2002).

Based on the allegations in the Complaint regarding defendant Dass, plaintiffs have adequately alleged the elements necessary to state a claim against Dass as an "employer" under the FLSA.

## b. Employees Within FLSA

Under the FLSA, an "employee" is "any individual employed by an employer."  29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098.  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce," and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce . . . ."  29 U.S.C. § 206(a).  In determining whether a plaintiff is an "employee" within this definition,  the "ultimate question is . . . 'whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself].'"  Velu v. Velocity Exp.,

11

Inc., 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quoting Godoy v. Restaurant Opportunity Ctr. of New York, Inc., 615 F. Supp. 2d 186, 192 (S.D.N.Y. 2009)).

As discussed above, plaintiffs allege in the Complaint that they were employees engaged in commerce and/or in the production of goods for commerce, as defined by the FLSA, and employed by the defendants within this statutory meaning.  (Compl. ¶¶ 8, 9, 17, 20, 30; Garcia Decl. ¶¶ 6, 7; Hernandez Decl. ¶¶ 6, 7).   At the inquest hearing, plaintiffs confirmed these allegations, and further explained that their hours, duties, and daily activities were controlled by the defendants.  Thus, "[i]t follows . . . that for purposes of this default, [they] qualif[y] as . . . 'employee[s]' under the FLSA."  Garcia v. Badyna, No. 13 CV 4021, 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014).  Additionally, the Court does not find any basis for exempting the employment relationship at issue from the FLSA's provisions.  See 29 U.S.C. § 213(a) (setting forth the exemptions).[7]

Plaintiffs allege that during the period of their employment, they were scheduled to work approximately 6 days a week on a schedule that ran from 10:30 a.m. to 11:00 p.m., for a total of 70.5 hours per week for Garcia and 72 hours per week for Hernandez.[8]  (Compl. ¶¶ 9-11). Plaintiff Garcia alleges that he was paid at rates varying from $230 a week to $360 a week, which amount to a wage rate of less than the applicable minimum wage for the entire period of his

_____

[7]The burden of demonstrating that an employee falls within one of these exempted categories rests squarely with an employer.  Chen v. Major League Baseball, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014) (noting that the exemptions are affirmative defenses which an employer must prove).  As defendants have failed to appear in this action, they cannot avail themselves of any of the affirmative defenses provided for in the statute.

[8]As noted infra at Section III(B)(2), there are some inconsistencies in plaintiffs' claims as to the number of hours worked and wages rates paid.  These inconsistencies will be addressed in the context of damages.

employment.  Both plaintiffs allege that they consistently worked more than 40 hours per week

and were never compensated at the overtime rate for the hours worked over 40, nor were they

paid spread of hours wages for any days that they worked more than ten hours.

Thus, because defendants are in default, the Court accepts plaintiffs' uncontested

allegations as to liability as true, and respectfully recommends that plaintiffs be deemed to have

sufficiently set forth the necessary elements to state a claim under the FLSA against both the

corporate defendants, Chirping Chicken NYC, Inc., and Chirping Chicken USA, Inc., and against

defendant Dass.


### 2. NYLL

Plaintiffs also allege that defendants violated the NYLL.  The NYLL and the FLSA are

analytically nearly identical.  D'Arpa v. Runway Towing Corp., No. 12 CV 1120, 2013 WL

3010810, at *18 (E.D.N.Y. June 18, 2013).  Like the FLSA, the NYLL establishes certain

minimum wage rates and requires that employees be compensated at an overtime rate of one-and-

one-half times their regular hourly pay for time worked in excess of 40 hours in a week.  See

N.Y. Lab. L. § 160; 12 N.Y.C.R.R. § 142-2.2; see also Noble v. 93 Univ. Place Corp., 303 F.

Supp. 2d 365, 376 (S.D.N.Y. 2003).

Thus, to recover under the NYLL, plaintiffs must prove that they were "employees" and

that the defendants were "employers" as defined by the statute.  Lauria v. Heffernan, 607 F.

Supp. 2d 403, 407-08 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a

defendant achieve a certain minimum in annual sales or business in order to be subject to the law.

Under the NYLL, an "employer" is "any person . . . employing any individual in any occupation,

13

industry, trade, business or service" or "any individual . . . acting as employer." N.Y. Lab. L. §§

190(3), 651(6).  Courts in this circuit have interpreted this definition coextensively with that of

the FLSA.  See, e.g., Chen v. Kaijou Restaurant, No. 13 CV 8968, 2016 WL 270870, at *2

(S.D.N.Y. Jan. 21, 2016).  Similarly, an employee is simply defined as "any individual employed

or permitted to work by an employer in any occupation." N.Y. Lab. L. § 651(5).  In making these

determinations, New York courts focus on the degree of control the alleged employer exercised

over the alleged employee, analyzing whether the employee:  "(1) worked at his own

convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on

the employer's payroll; and (5) was on a fixed schedule." Fermin v. Las Delicias Peruanas

Restaurant, Inc., 93 F. Supp. 3d at 34 (quoting Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198,

770 N.Y.S.2d 692, 695, 802 N.E.2d 1090, 1095 (N.Y. 2003)).

        In this case, plaintiffs allege that they were employed by defendants within the meaning

of Section 651 of the NYLL.  (See Compl. ¶ 58).  The allegations set forth in plaintiffs'

Complaint, coupled with the information included in plaintiffs' declarations and provided during

the inquest proceeding, clearly establish that Garcia and Hernandez were both employees of all

three defendants.  Plaintiffs were assigned to specific shifts, worked fixed schedules, and

received flat wages from the defendants.  (See Garcia Decl. ¶¶ 2, 4, 9, 10, 11; Hernandez Decl. ¶¶

2, 4, 8, 9, 10, 11).  Plaintiffs further allege that defendants willfully failed to pay them overtime

as prescribed by the NYLL (Compl. ¶¶ 59-60; Garcia Decl. ¶ 12; Hernandez Decl. ¶ 12), and

willfully failed to pay spread of hours wages for each day that they worked over ten hours a day,

in violation of the NYLL.  (Compl. ¶¶ 66-67; Garcia Decl. ¶ 13; Hernandez Decl. ¶ 13).

Moreover, plaintiffs allege that when they were paid, the defendants failed to provide them with

a statement that listed the hourly rate of pay, overtime pay, and the basis of computing straight pay and overtime pay, also in violation of the NYLL. (Compl. ¶ 72; Garcia Decl. ¶ 11; Hernandez Decl. ¶ 11).

Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiffs be deemed to have adequately alleged the elements necessary to state a claim against all defendants under the NYLL.

B. Single Employer Doctrine

Plaintiffs seek to hold all three defendants jointly and severally liable for all violations of the FLSA and NYLL on the grounds that they constitute a "single integrated enterprise." (Pls.' Mem. at 4). The FLSA and the NYLL allow for multiple different entities to be treated as a single employer where, despite nominal difference, the entities are "part of a single integrated enterprise." Perez v. Westchester Foreign Autos., Inc., No. 11 CV 6091, 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013); see also Canelas v. A'Mangiare Inc., No. 13 CV 3630, 2015 WL 2330476, at *6 (S.D.N.Y. May 14, 2015) (applying the "single integrated enterprise" test to claims under the NYLL). Such a finding allows all entities to be held responsible for the FLSA and NYLL violations of any one entity. Id. To establish single employer liability, courts employ a four-factor test, analyzing the extent of: (1) the interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. Juarez v. 449 Restaurant Corp., 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014). The inquiry is highly fact-specific, and requires courts to look at the totality of circumstances "in light of economic reality." Marin v. Apple-Metro, Inc., No. 12 CV 5274, 2014 WL 11035376, at *5

15

(E.D.N.Y. July 29, 2014).

Here, given that the Court must accept all of plaintiffs' factual allegations as true, the Court finds that plaintiffs have adequately established that the Chirping Chicken defendants constitute a single employer under the law.  The Complaint alleges that both Chirping Chicken defendants are involved in the same industry, are located at the same addresses, and are wholly owned and operated by defendant Dass.  (Compl. ¶¶ 10-12).   Further, both plaintiffs have submitted declarations stating that "[d]efendants Chirping Chicken NYC and Chirping Chicken U.S.A. are the same company but with different names" (Garcia Decl. ¶ 14; Hernandez Decl. ¶ 14), and that both defendants "maintain the same address, owners, management, personnel, equipment, and still serve American style food."  (Garcia Decl. ¶ 15; Hernandez Decl.¶ 15).  Similarly, plaintiffs allege that defendant Dass "dominated the day-to-day operating decisions of Chirping Chicken" and "had complete control of the alleged activities of Chirping Chicken . . . ." (Compl. ¶¶ 31, 32).

The Court finds this level of detail, in the context of a default, sufficient to establish that all defendants were a single employer for purposes of liability under the FLSA and the NYLL. Accordingly, the Court respectfully recommends that all defendants be held jointly and severally liable for all FLSA and NYLL violations.

C.  <u>Willfulness</u>

The FLSA generally provides for a two-year statute of limitations for enforcement of its provisions.  29 U.S.C. § 255(a).  This limitations period may be extended to three years, however, upon a showing that an employer's violation of the FLSA was willful.  <u>Id.</u>  An

employee bringing suit bears the burden of demonstrating that the violations were willful.

Porter v. New York Univ. Sch. of Law, 392 F.3d 530, 531 (2d Cir. 2004).

Here, plaintiffs have simply alleged at the end of each cause of action that defendants'
conduct "was willful." (See Compl. ¶¶ 42, 51). Courts are divided on whether such conclusory
allegations are sufficient to establish the legal element of willfulness. Compare Lopez v. Yossi's
Heimishe Bakery Inc., No. 13 CV 5050, 2015 WL 1469619, at *8 (E.D.N.Y. Mar. 30, 2015);
Solis v. Tally Young Cosmetics, LLC, No. 09 CV 4804, 2011 WL 1240341, at *5 (E.D.N.Y.
Mar. 4, 2011), report and recommendation adopted, 2011 WL 1240108 (E.D.N.Y. Mar. 30,
2011) (finding conclusory allegations insufficient to establish that the violations were willful),
with Guaman v. Krill Contracting, Inc., No. 14 CV 4242, 2015 WL 3620364, at *5 (E.D.N.Y.
June 9, 2015); Herrera v. Tri-State Kitchen and Bath, Inc., No. 14 CV 1695, 2015 WL 1529653,
at *6 (E.D.N.Y. Mar. 31, 2015) (finding that even such conclusory allegations, coupled with a
defendant's default, can serve to establish willfulness for purposes of extending the statute of
limitations).

In this case, given the defendants' default, coupled with the amount of wages allegedly
paid to Mr. Garcia, which were significantly below the applicable minimum wage rates in effect
at the time,[9] the Court finds that plaintiffs have adequately alleged willful violations of the
FLSA, and therefore, defendants may be held liable for those violations which occurred on or
after April 23, 2012, three years before the instant action was filed.

Actions to recover damages flowing from a violation of the NYLL, on the other hand,
must be brought within six years of the violation. N.Y. Lab. L. § 663. Accordingly, defendants

_____

[9]See discussion infra at Section III(B)(2).

may be held liable for any violations that occurred on or after April 23, 2009, six years before the instant lawsuit was filed.

## III. Remedy

### A. Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this time, and for the reasons stated herein, the Court finds that plaintiffs have sufficiently established liability as to warrant entry of a default judgment for damages.

Here, it is beyond dispute that defendants are in default. The corporate defendants, Chirping Chicken NYC, Inc. and Chirping Chicken USA, Inc., are in default because they never filed an answer nor did they retain an attorney to represent them in this action. The failure of a corporate defendant to obtain counsel constitutes a failure to defend because a corporation cannot proceed pro se in federal court. See Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2d Cir. 2006); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear only through counsel); Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"). Defendant Dass also failed to appear and answer or otherwise respond to the Complaint. Moreover, the defendants failed to appear at the inquest hearing. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[defendant's] default is crystal clear – it does not even oppose this motion [for entry of default judgment]").

Here, defendants' failure to respond to the Complaint warrants the entry of a default

judgment. Further, the amount of money involved in this case is relatively insignificant. Cf. id. (entering default but giving defendant 20 days to set aside the default because plaintiff's damages request ran well into the millions of dollars).

Given the numerous opportunities afforded to defendants, and their failure to participate in these proceedings, the Court finds no compelling reason to delay further. Accordingly, it is respectfully recommended that default judgment be entered against defendants Chirping Chicken NYC, Inc., Chirping Chicken USA, Inc., and Ramji Dass.

B. Damages

1. Legal Standard

Having found that defendants constitute a "single employer" for purposes of the FLSA, and all are liable for damages flowing from FLSA violations on or after April 23, 2012 and for damages flowing from NYLL violations on or after April 23, 2009, the Court now must determine whether plaintiffs have established their damages to a "reasonable certainty." Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d at 83. While a defendant's failure to pay minimum wages and overtime violates both the FLSA and the NYLL, a plaintiff may only recover damages under one statute, as "double recovery of the same wages and related damages is not permitted." Gonzales v. Gan Israel Pre-Sch., No. 12 CV 6304, 2014 WL 1011070, at *11 (E.D.N.Y. Mar. 14, 2014). Courts will thus award damages under whichever statute would allow for greater recovery. Id.

As noted supra, when a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability. See Greyhound

19

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986).  However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendants have the opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"  Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that "[t]he Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  FED. R. CIV. P. 55(b)(2)(b).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

In this case, an inquest hearing was held on February 4, 2016 before the undersigned, at which plaintiffs appeared but defendants did not.  Since defendants are in default, plaintiffs' evidence on damages is undisputed.  As an initial matter, plaintiffs' Declarations, testimony, and submissions as to the hours worked and rate of pay received are sufficient bases for this Court to

recommend an award of damages, even in the absence of further documentation.

Under the FLSA, an employee-plaintiff generally "has the burden of proving that he performed work for which he was not properly compensated." Santillan v. Henao, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds by 29 U.S.C. § 251, et seq).  The Supreme Court in Anderson v. Mt. Clemens Pottery Co. noted, however, that "employees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy." 328 U.S. at 687.  By defaulting, defendants have "deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages." Santillan v. Henao, 822 F. Supp. 2d at 294.  In default cases, the Supreme Court has held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687), overruled on other grounds, Slayton v. Am. Express Co., 460 F.3d 216 (2d Cir. 2006).

In light of this holding, courts in this Circuit have held that where a defendant-employer defaults, a plaintiff may meet this burden of proof "by relying on his recollection alone." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).  Otherwise, defendants in FLSA cases would stand to benefit from choosing not to cooperate with discovery or litigation efforts, and "[o]ne should not be permitted to profit by its own wrongful act." Boyke v. Superior Credit Corp., No. 01 CV 0290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006) (citing 29

U.S.C. § 211(c), which requires that employers "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment"); see also Park v. Seoul Broad. Sys. Co., No. 05 CV 8956, 2008 WL 619034, at *7 (S.D.N.Y. Mar. 6, 2008) (holding that courts should apply a "special burden-shifting standard" where employers fail to comply with this statutory duty of record keeping).

New York law also requires that employers keep various, detailed employment records. Like the FLSA, the NYLL requires that employers keep employment records in their course of business relating to employees' rates of pay, hours, dates of work, and payroll, among other information. See N.Y. Lab. L. § 195(1)(a) (requiring an employer to "provide his or her employees, in writing . . . a notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances"); N.Y. Lab. L. § 195(2) (requiring employers to notify employees of any changes in the pay day prior to changing the pay day); N.Y. Lab. L. § 195(3) (requiring employers to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work . . . gross wages; deductions; allowances, if any claimed as part of the minimum wage; and net wages"); N.Y. Lab. L. § 195(4) (requiring employers to "establish, maintain[,] and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee"). Thus, where the defendant has failed to maintain proper records, the burden of proving that plaintiff was paid properly falls on the defendant. See Marin v. JMP Restoration Corp., 09 CV 1384, 2012 WL 4369748, at *6 (E.D.N.Y. Aug. 24, 2012) (explaining that "[t]o determine NYLL overtime damages, courts use the same burden-shifting scheme employed in FLSA actions").

22

Thus, under both federal and state laws, defendant-employers have an obligation to keep records, and by virtue of defendants' default, plaintiffs' "recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004); accord Chao v. Vidtape, 196 F. Supp. 2d 281, 293-94 (E.D.N.Y. 2002). Courts have applied this same presumption of correctness to a plaintiff's recollection of wages earned. See, e.g., Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d at 84.

Here, because defendants did not meet their obligation to provide plaintiffs with records, the only evidence offered to support plaintiffs' claim that they were paid less than they were entitled to under the law is based on plaintiffs' statements. Given that the defendants have not appeared in this action to challenge plaintiffs' claims, the Court finds plaintiffs' evidence as to hours worked and wages paid credible, and bases its recommendation on plaintiffs' recollections as to hours worked and wages paid.

## 2. Minimum Wage Claims

Plaintiff Garcia seeks unpaid minimum wages under the FLSA. An employer who fails to meet minimum wage obligations under the FLSA and the NYLL "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); accord 12 N.Y.C.R.R. § 143-1.3. Garcia alleges that, for the entire duration of his employment, he did not receive the statutorily prescribed minimum wage. Hernandez has not raised a claim of minimum wage violations. Accordingly, the Court has assessed the minimum wages Garcia is owed for the three

23

years preceding the filing of the Complaint.[10]

Under the FLSA, the applicable minimum hourly wage rate was $6.55 for the period up to and including July 23, 2009; and $7.25 from July 24, 2009 on. 29 U.S.C. § 206(1). However, under the NYLL, the applicable minimum hourly wage rates for the time periods at issue in this matter were higher during certain time periods as follows: (1) $7.15 for the period up to and including December 30, 2013; (2) $8.00 for the period from December 31, 2013 to December 30, 2014; and (3) $8.75 from December 31, 2014. N.Y. Lab. L. § 652(1). Both statutes specify that, where the other statute prescribes a higher minimum wage, the higher wage rate shall control. See 29 U.S.C. § 218(a); N.Y. Lab. L. § 652(1). Here, although Garcia only seeks damages under the FLSA for defendants' minimum wage violations, the Court applies the minimum wage rate set by the NYLL where it is higher than the rate set by the FLSA.

Thus, since the Court has only assessed damages running from April 23, 2012, three years before the filing of the Complaint, the applicable minimum wage rates for the relevant times that Garcia worked for Chirping Chicken are as follows: (1) $7.25 for the period running from April 23, 2012 up to and including December 30, 2013; (2) $8.00 for the period from December 31, 2013 to December 30, 2014; and (3) $8.75 from December 31, 2014 until June 1, 2015.[11]

---

[10]The Complaint does not include a claim for minimum wage violations under the NYLL. Since Rule 54 of the Federal Rules of Civil Procedure specifies that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings," FED. R. CIV. P. 54(c), the Court has used the FLSA's three year statute of limitations in assessing Garcia's minimum wage damages.

[11]Although plaintiffs do not specify the date on which they ceased working for the Chirping Chicken defendants, the Court has analyzed the summary of damages contained in plaintiffs' motion papers. In this summary sheet, the last term of employment for which plaintiffs seek damages is marked as running from "January-15" to "June-15," which plaintiffs have stated constituted 21.57 weeks. (Newhouse Decl., Ex. J). (Citations to "Newhouse Decl."

In his Declaration, Garcia alleges that he began working for the defendants from March 17, 2009 through June 2015, and worked six shifts, for a total of 70.5 hours of work per week. (Garcia Decl. ¶¶ 17-18).  The Declaration further states that Garcia received a weekly salary of $240.00 until May 2011, when it was increased to $360.00.  (Id. ¶ 10).  At the hearing, however, Mr. Garcia testified that when he initially began working, he was only paid $230 a week, and that while he worked six days a week, his hours were from 10:30 a.m. to 11:00 p.m., which would indicate that he worked 75 hours per week.  (Tr. at 8:25, 9:3-9).

The Court has considered the discrepancies between the hours and wages testified to by Garcia at the hearing and those set forth in the Complaint and in his Declaration filed in support of the request for default judgment.  In determining which figures to use in recommending damages, the Court notes that despite the hours stated in the Declaration, both the Complaint and Garcia's testimony consistently claim that he worked for six days a week from 10:30 a.m. until 11:00 p.m.  Given the Court's observations of the witness as he testified, the language issues that required an interpreter in order for plaintiff to understand the questions, and the likelihood that he would recollect his schedule but perhaps not the total number of hours worked per week, the Court credits his testimony at the hearing and recommends that he be awarded damages for minimum wage violations based on the testimony provided at the hearing.  Moreover, even though the Complaint alleges that he worked "without a break" (Compl. ¶ 18), the Court credits

---

refer to the Declaration of Jack Newhouse, attached to plaintiffs' Motion for Default Judgment, filed on April 23, 2015).  Accordingly, the Court has used June 1, 2015, the date 21.57 weeks after January 1, 2015, as the final day of plaintiffs' employment by the defendants.

Garcia's testimony that he took a half hour lunch break[12] (Tr. at 8:25, 9:3-9), and finds that Garcia worked a total of 72 hours per week.

As discussed above, however, plaintiff cannot recover under the FLSA for any violations which occurred more than three years prior to the filing of the Complaint. Since the Complaint does not include claims for minimum wages under the NYLL, Garcia is only entitled to recover for damages beginning on April 23, 2012. For all periods after April 23, 2012, Garcia earned $360.00 for working 72 hours per week; thus, his hourly wage was $5.00. Garcia was thus underpaid by $2.25 per hour until December 30, 2013. Since the minimum wage increased at certain times during his employment, the amount by which Garcia was underpaid also increased to $3.00 per hour until December 30, 2014; and then again to $3.25 per hour thereafter.

Using the applicable minimum wage rates and salary paid during each period of employment, the Court recommends that plaintiff Garcia be awarded the following amounts representing defendants' violations of the minimum wage laws:

---

[12]In order to receive compensation for lunch breaks, a plaintiff employee must demonstrate that he or she was required to perform "work" during the breaks, which the Second Circuit has explained requires a showing that he or she "perform[ed] activities predominantly for the benefit of the employer." Reich v. Southern New England Telecommunications Corp., 121 F. 3d 58, 64 (2d Cir. 1997). Since there was no testimony or evidence presented to show that Garcia was required to continue working during the lunch break, the Court has not included that period in determining the hours worked.

**Chart 1: Garcia's Unpaid Minimum Wages**

| Period | Minimum Hourly Wage | Hourly Wage Paid to Garcia | Hourly Wage Owed | Weeks in Period | Total Hours Worked | Total Wages Owed for Period |
|---|---|---|---|---|---|---|
| 4/23/12 - 12/30/13 | $7.25 | $5.00 | $2.25 | 88.14 | 6,346.08 | $14,278.68 |
| 12/31/13 - 12/30/14 | $8.00 | $5.00 | $3.00 | 52.14 | 3,754.08 | $11,262.24 |
| 12/31/14 - 6/1/15 | $8.25 | $5.00 | $3.25 | 21.86 | 1,573.92 | $5,115.24 |

Accordingly, the Court respectfully recommends that plaintiff Garcia be awarded a total of $30,656.16 in unpaid minimum wages under the FLSA for the period running from April 23, 2012 to June 1, 2015.

### 3. Overtime Claims

Both plaintiffs Garcia and Hernandez allege violations of the FLSA and NYLL based on defendants' failure to pay overtime for the hours worked over 40 in a week.

Under both federal and New York law, an employee is entitled to overtime pay, or one and one-half times the employee's regular wage rate, for hours worked in excess of 40 hours in one work week.  See 29 U.S.C. § 207(a)(2)(C); 12 N.Y.C.R.R. § 146-1.4.  Accordingly, this Court has examined plaintiffs' submissions and calculated damages based on the applicable statutes.

According to plaintiff Garcia's testimony, he was employed at Chirping Chicken beginning in March 2009 until June 1, 2015, working 72 hours a week and receiving a flat rate of

27

$230.00 per week, which was increased to $360.00 per week in May 2011, without receiving any overtime pay.  Plaintiff Hernandez also claims that during his period of employment from May 2008 until June 2015, he worked more than 72 hours per week and received a flat weekly rate between $600.00 and $650.00, without receiving any overtime pay.  (Hernandez Decl. ¶¶ 10, 13). Thus, the Court finds that plaintiffs are entitled to overtime wages under the FLSA for a period from April 23, 2012 until June 1, 2015, the end of their employment.

Under NYLL's six-year statute of limitations, see N.Y. Lab. L. § 663(3), plaintiffs are entitled to recover overtime wages, calculated at the rate of one and one-half times their regular rate of pay for any hour worked over 40 in a given workweek, from April 23, 2009 — six years prior to the date plaintiffs commenced this action — to June 1, 2015, the date their employment terminated.  Since plaintiffs are not entitled to recover double damages under both the FLSA and the NYLL, Janus v. Regalis Constr., Inc., 11 CV 5788, 2012 WL 3878113, at *7 (E.D.N.Y. July 23, 2012), report and recommendation adopted, 11 CV 5788, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012); Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 264 n.4 (S.D.N.Y. 2008), and since the method for calculating overtime under both the FLSA and NYLL is the same, the Court has calculated overtime wages owed to each plaintiff from April 23, 2009 until June 1, 2015.

i.  Garcia's Overtime

Plaintiff Garcia was paid at the rate of $230.00 per week for the period April 23, 2009 until April 30, 2011, and then at the rate of $360.00 per week from May 1, 2011 to June 1, 2015. As Garcia consistently worked 72 hours per week, the Court calculates that he received an hourly wage of $3.19 between April 23, 2009 and April 30, 2011, and an hourly wage of $5.00 on and

28

after May 1, 2011.  Both rates fall far below the applicable minimum wage rates described above.

Since the statute provides that overtime rates shall be calculated based on the employee's regular

rate of pay or the minimum wage, whichever is greater, 29 U.S.C. § 207; 29 C.F.R. § 778.107,[13]

the Court has calculated Garcia's overtime using the applicable minimum wage rate in effect for

each period of time.

Crediting Garcia's testimony that he worked 72 hours per week for the entire period, the

Court finds that Garcia worked 32 hours each week for which he was entitled to receive overtime

compensation.   Thus, the Court has determined Garcia's unpaid wages for these hours by

multiplying the number of unpaid overtime hours each week (32) by the number of weeks

plaintiff worked and the applicable overtime rate of pay.[14]  Using the time periods and rates of

pay set forth in Garcia's testimony, the Court finds that Garcia was entitled to receive overtime

payments at the following rates for every hour over 40 that he worked:

---

[13]Although the FLSA provides that an employee is entitled to be paid overtime wages at a
rate "not less than one and one-half times the regular rate at which he is employed" for hours
worked over 40, federal regulations make it clear that "[i]f the employee's regular rate of pay is
higher than the statutory minimum, his overtime compensation must be computed at a rate not
less than one and one-half times such higher rate." 29 C.F.R. § 778.107.  New York law also
requires that employees be compensated at "one and one-half times the employer's regular rate of
pay" and provides that the regular rate should be calculated "in the manner and methods provided
in" the FLSA.  12 N.Y.C.R.R. § 142-2.2.  Here, because Garcia was paid less than the minimum
wage, the Court has calculated his overtime rate based on the applicable minimum wage in effect
at the time, which was consistently higher than the rate he was actually paid.

[14]The applicable overtime rate of pay, as explained in both the FLSA and the NYLL, is
1.5 times the applicable minimum wage rate.  The Court has used this rate of pay for all relevant
time periods, regardless of whether unpaid minimum wages were actually awarded supra, Section
III(B)(2).

**Chart 2: Garcia's Unpaid Overtime Wages**

| Period | Minimum Wage | Overtime Rate of Pay | Overtime Owed Per Hour[15] | Hours of Overtime Worked Per Week | Weeks in Period | Total Overtime Owed |
|---|---|---|---|---|---|---|
| 4/23/09 - 7/23/09 | $7.15 | $10.73 | $7.54 | 32 | 13.14 | $3,170.42 |
| 7/24/09 - 4/8/11 | $7.25 | $10.88 | $7.69 | 32 | 89.14 | $21,935.57 |
| 4/9/11 - 4/30/11 | $7.25 | $10.88 | $7.69 | 32 | 3.14 | $772.69 |
| 5/1/11 - 4/22/12 | $7.25 | $10.88 | $5.88 | 32 | 51.14 | $9,622.50 |
| 4/23/12 - 12/30/13 | $7.25 | $10.88 | $3.63 | 32 | 88.14 | $10,238.34 |
| 12/31/13 - 12/30/14 | $8.00 | $12.00 | $4.00 | 32 | 52.14 | $6,673.92 |
| 12/31/14 - 6/1/15 | $8.25 | $12.38 | $4.13 | 32 | 21.86 | $2,889.02 |

Accordingly, the Court respectfully recommends that plaintiff Garcia be awarded

$55,302.46 in unpaid overtime for the period between April 23, 2009 and June 1, 2015.


ii. Hernandez's Overtime

Plaintiff Hernandez alleges that he was paid a flat rate of $600.00 per week for the period

---

[15]The Court has calculated the amount of overtime owed per hour by subtracting the hourly wage Garcia received from the applicable overtime rate of pay. For all periods for which the Court has awarded minimum wage damages in Chart 1 above, the Court has subtracted the minimum wage from the overtime rate of pay to calculate the amount of overtime owed per hour.

from April 23, 2009[16] to April 30, 2011, during which time he worked 72 hours per week. (Hernandez Decl. ¶¶ 9, 10). From May 1, 2011 until May 31, 2013, Hernandez received a weekly salary of $620.00, working 72 hours per week. (Id.) From June 1, 2013 until June 1, 2015, Hernandez was paid $650.00 per week, and he continued to work 72 hours per week. (Id.) Thus, Mr. Hernandez earned an hourly wage of $8.33[17] between April 23, 2009 and April 30, 2011; an hourly wage of $8.61[18] between May 1, 2011 and May 31, 2013; and $9.03[19] between June 1, 2013 and June 1, 2015.

Both the FLSA and the NYLL make it clear that where an employee is paid more than the applicable minimum wage, overtime is to be calculated based on the actual wage the employee earns. See 29 C.F.R. § 778.107; 12 N.Y.C.R.R. § 142-2.2. Since Hernandez's regular rate of pay exceeded the applicable minimum wage for the entire period of his employment, the Court has calculated his overtime rate using his applicable regular wage rate in effect for each period of time.

Crediting plaintiff's testimony that he worked 72 hours per week for the entire period, the

---

[16]Hernandez alleges that he began working for the Chirping Chicken defendants in May 2008. (Hernandez Decl. ¶ 10). However, as discussed above, the applicable six-year statute of limitations under the NYLL only allows Hernandez to recover for the period of the six years preceding the commencement of this action, from April 23, 2009 to the termination of his employment in June 2015.

[17]This figure was calculated by dividing Hernandez's weekly salary of $600.00 by the 72 hours he worked each week.

[18]This figure was calculated by dividing Hernandez's weekly salary of $620.00 by the 72 hours he worked each week.

[19]This figure was calculated by dividing Hernandez's weekly salary of $650.00 by the 72 hours he worked each week.

Court finds that Hernandez worked 32 hours each week for which he was entitled to receive overtime compensation at 1.5 times his regular rate of pay.  Thus, the Court has determined Hernandez's unpaid wages for these hours by multiplying the number of unpaid hours each week (32) by the number of weeks plaintiff worked and plaintiff's overtime rate of pay.[20]  Using the time periods and rates of pay set forth in plaintiff's Declaration, plaintiff Hernandez was entitled to receive overtime payments at the following rates for every hour over 40 that he worked:

**Chart 3: Hernandez's Unpaid Overtime Wages**

| Period | Regular Rate of Pay | Overtime Owed Per Hour | Hours of Overtime Worked Per Week | Weeks in Period | Total Overtime Owed |
|---|---|---|---|---|---|
| 4/23/09 - 4/8/11 | $8.33 | $4.17 | 32 | 102.29 | $13,633.21 |
| 4/9/11 - 4/30/11 | $8.33 | $4.17 | 32 | 3.14 | $419.00 |
| 5/1/11 - 4/22/12 | $8.61 | $4.31 | 32 | 51.14 | $7,045.05 |
| 4/23/12 - 5/31/13 | $8.61 | $4.31 | 32 | 57.71 | $7,950.13 |
| 6/1/13 - 6/1/15 | $9.03 | $4.52 | 32 | 104.43 | $15,088.05 |

Accordingly, the Court respectfully recommends that plaintiff Hernandez be awarded $44,135.44 in unpaid overtime wages.

---

[20]The overtime pay rate was calculated in the same manner as described supra, n.12.

4. <u>NYLL Spread of Hours Pay</u>

Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours. 12 N.Y.C.R.R. § 146-1.6(a). The statute specifies that compensation will be at the applicable minimum wage "regardless of a given employee's regular rate of pay." 12 N.Y.C.R.R. § 146-1.6(d).

Plaintiffs have alleged that they worked over ten hours every day on which they worked. (Compl. ¶¶ 18, 21; <u>see also</u> Newhouse Decl., Ex. J). As defendants have failed to introduce any evidence to the contrary, the Court has credited the undisputed allegations contained in the Complaint, both plaintiffs' Declarations, and the testimony at the inquest hearing. Since both plaintiffs worked the same number of hours, and spread of hours wages are calculated based on the applicable minimum wage rate, rather than the regular rate of pay, both plaintiffs are entitled to the same amount in unpaid spread of hours wages. Accordingly, the Court respectfully recommends that each plaintiff be awarded spread of hours wages in the following amounts:

**Chart 4: Both Plaintiffs' Unpaid Spread of Hours Wages**

| Period | Minimum Wage | Days Worked Per Period | Total Spread of Hours Pay Owed |
|---|---|---|---|
| 4/23/09 - 7/23/09 | $7.15 | 92 | $657.80 |
| 7/24/09 - 4/8/11 | $7.25 | 624 | $4,524.00 |
| 4/9/11 - 12/30/13 | $7.25 | 997 | $7,228.25 |
| 12/31/13 - 12/30/14 | $8.00 | 365 | $2,920.00 |
| 12/31/14 - 6/1/15 | $8.25 | 153 | $1,262.25 |

Accordingly, the Court respectfully recommends that each plaintiff be awarded a total of

$16,592.30 in unpaid spread of hours wages under the NYLL.

### 5. Rate of Pay Notification Under the NYLL

Plaintiffs also seek damages due to defendants' alleged failure to issue written pay stubs or notice of plaintiffs' rate of pay, in violation of Sections 195 and 198 of the NYLL. (See Compl. ¶¶ 56-59; Pls.' Mem. at 10). Specifically, plaintiffs claim that they are entitled to $100 per week for each week that the defendants failed to issue a written notice of each plaintiff's rate of pay, with a maximum award set by statute of $2,500.00. (Pls.' Mem. at 8-9). Plaintiffs claim that they were never issued a written notice of their rates of pay and thus, they each request the maximum award of $2,500.00. (Id.)

Section 195(3) of the NYLL went into effect on April 9, 2011, approximately 27 months prior to the end of plaintiffs' employment. The statute requires that every employer provide his or her employees with "a statement with every payment of wages," listing various information, including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked. N.Y. Lab. L. § 195(3). If such notice is not provided to the employee, "he or she shall recover in a civil action damages of one hundred dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of twenty-five hundred dollars." N.Y. Lab. L. § 198(1-d).

Accepting as true plaintiffs' allegations that they never received the written notices required by Section 195(3), the Court finds that plaintiffs are entitled to recover damages for defendants' violation of Section 195(3). See Jaramillo v. Banana King Restaurant Corp., 2014

34

WL 2993450, at *6-7 (holding that plaintiff was entitled to receive statutory maximum of $2,500.00 in damages in a default judgment case because employer failed to provide the required notice for plaintiff's entire employment period of 61 weeks).

Since both plaintiffs were employed for more than 25 weeks after Section 195(1)(a) of the NYLL went into effect on April 9, 2011, they are entitled to receive the maximum award available under the statute of $2,500.00, or $100.00 per week for 25 weeks.  Thus, plaintiffs are each entitled to an award of $2,500.00 for the period running from April 9, 2011 to October 1, 2011.

Accordingly, the Court respectfully recommends that plaintiffs each be awarded the maximum award of $2,500.00 for defendants' violation of Section 195(3) of the NYLL.

### 6. Liquidated Damages Under the FLSA and NYLL

In addition to compensatory damages, plaintiffs seeks liquidated damages pursuant to both federal and state law.  See 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1).  Under the FLSA, an employer who fails to pay his or her employees the minimum wage or overtime compensation required by Sections 206 and 207 is "liable to the employee . . . affected in the amount of [his or her] unpaid minimum wages, or [his or her] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission in proper payment was not a violation of the FLSA.  Jemine v. Dennis, 901 F. Supp. 2d 365, 388 (E.D.N.Y. 2012) (citing 29 U.S.C. §§ 216(b), 260).  This award serves as "compensation to the employee occasioned by the delay in receiving wages caused by the

employer's violation of the FLSA." Id. (quoting Herman v. RSR Secs. Servs., Ltd., 172 F. 3d

132, 141-42 (2d Cir. 1999)).  Since the defendants have defaulted and not demonstrated that they

acted in good faith in failing to pay overtime to plaintiffs, the Court finds that plaintiffs are

entitled to an award of liquidated damages under the FLSA.

 Until April 9, 2011, an employee was only entitled to receive liquidated damages under

the NYLL totaling 25% of actual damages, if the employee could demonstrate that the

employer's violations of the statute were willful.  See Gold v. N.Y. Life Ins. Co., 730 F.3d 137,

143 (2d Cir. 2013) (explaining the history of liquidated damages under the NYLL).  The NYLL

was subsequently amended on April 9, 2011, to shift the burden to the employer and now allows

an employee to receive liquidated damages equal to 100% of total damages unless the employer

demonstrates a good faith basis for believing he or she was in compliance with the law.  Id.

Having already determined that the defendants' violations of the FLSA and the NYLL were

willful, see supra Section II(B), and without any evidence that defendants acted in good faith, the

Court respectfully recommends that plaintiffs be awarded liquidated damages under the NYLL

for the entire period from April 23, 2009 to June 1, 2015.

 In contrast to the analogous FLSA provision, the purpose of liquidated damages under the

NYLL is to "constitute a penalty to deter an employer's willful withholding of wages due."

Jemine v. Dennis, 901 F. Supp. 2d at 388 (quoting Reilly v. Natwest Mkts. Group, Inc., 181 F.3d

253, 265 (2d Cir. 1999)).  In the absence of any appellate authority addressing the question of

whether recovery of liquidated damages under both statutes is permitted, district courts in this

Circuit have split.  Some courts allow awards under both statutes because of the different

purposes of the awards, while others have found cumulative recovery impermissibly duplicative.

Compare Eschmann v. White Plains Crane Servs., Inc., No. 11 CV 5881, 2014 WL 1224247, at *7-*8 (E.D.N.Y. Mar. 24, 2014), with Inclan v. New York Hospitality Grp., 95 F. Supp. 3d 490, 503-04 (S.D.N.Y. 2015).

Having reviewed the rulings in this district, the Court notes that "the majority view is that plaintiffs may recover liquidated damages under both statutes because each award serves fundamentally different purposes." Gomez v. El Rancho de Andres Carne de Tres, Inc., No. 12 CV 1264, 2014 WL 1310296, at *8 (E.D.N.Y. March 11, 2014); see also Eschmann v. White Plains Crane Servs., Inc., 2014 WL 1224247, at *7-*8 (collecting cases); Jemine v. Dennis, 901 F. Supp. 2d at 388; Maliza v. 2011 MAR-OS Fashion, Inc., No. 07 CV 463, 2010 WL 502955, at *1, n.4 (E.D.N.Y. Feb. 10, 2010); Ke v. Saigon Grill, Inc., 595 F. Supp. 2d at 261-62.

Accordingly, the Court respectfully recommends that plaintiffs be permitted to recover liquidated damages under the FLSA and, where applicable, under the NYLL as well.

As listed in Chart 1 and Chart 2 above, plaintiff Garcia is owed a total of $50,457.44[21] in unpaid minimum and overtime wages under the FLSA for the period between April 23, 2012 and June 1, 2015.  Thus, since liquidated damages under the FLSA are to be awarded at the rate of 100% of the unpaid overtime and minimum wages owed, plaintiff Garcia is entitled to receive $50,457.44 in liquidated damages, representing the total amount owed in unpaid overtime for the three-year period covered by the FLSA.  Similarly, because plaintiff Hernandez is entitled to

---

[21]This figure represents the $30,656.16 owed to Garcia in unpaid minimum wages under the FLSA, added to the sum of amounts owed in overtime from April 23, 2012 to June 1, 2015, which is $19,801.28.

receive $23,038.18[22] in unpaid overtime for the three-year period covered by the FLSA as

described in Chart 3, the Court finds that Hernandez is entitled to $23,038.18 in FLSA liquidated

damages.

Under the NYLL, plaintiffs are entitled to liquidated damages equal to 25% of the unpaid

wages for the period from April 23, 2009 up to, but not including, April 9, 2011.  As explained in

Charts 2 and 4 above, plaintiff Garcia is entitled to a total of $30,287.79[23] in unpaid overtime and

spread of hours wages for the period between April 23, 2009 and April 9, 2011.  Thus, for this

period, plaintiff Garcia should receive $7,571.95 in liquidated damages under the NYLL,

representing 25% of his total NYLL damages.  Having found that plaintiff Hernandez is owed

$18,815.01[24] under the NYLL for this period in Charts 3 and 4 above, the Court finds that

Hernandez should receive $4,703.75 in liquidated damages under the NYLL, representing 25%

of his total NYLL damages for this period.

Beginning on April 9, 2011, the rate of liquidated damages under the New York Labor

---

[22]This figure represents the sum of the overtime owed to Hernandez for the period
between April 23, 2012 and May 31, 2013 ($7,950.13) and the overtime owed to Hernandez for
the period between June 1, 2013 and June 1, 2015 ($15,088.05).

[23]This figure represents the sum of:  (1) the $3,170.42 owed to Garcia in unpaid overtime
wages for the period between April 23, 2009 and July 23, 2009; (2) the $21,935.57 owed to
Garcia in unpaid overtime wages for the period between July 24, 2009 and April 8, 2011; (3) the
$657.80 owed to Garcia in unpaid spread of hours wages for the period between April 23, 2009
and July 23, 2009; and (4) the $4,524.00 owed to Garcia in unpaid spread of hours wages for the
period between July 24, 2009 and April 8, 2011.

[24]This figure represents the sum of:  (1) the $13,633.21 owed to Hernandez in unpaid
overtime wages for the period between April 23, 2009 and April 8, 2011; (2) the $657.80 owed
to Hernandez in unpaid spread of hours wages for the period between April 23, 2009 and July 23,
2009; and (3) the $4,524.00 owed to Hernandez in unpaid spread of hours wages for the period
between July 24, 2009 and April 8, 2011.

Law increased from 25% to 100% of overtime owed.  Thus, for the period from April 9, 2011

until June 1, 2015, the date plaintiffs' employment ended, plaintiffs are entitled to receive 100%

of the wages owed as liquidated damages under the NYLL.  As described above, plaintiff Garcia

is entitled to $41,606.97[25] in unpaid overtime and spread of hours wages for this time period;

accordingly, he is entitled to receive liquidated damages of $41,606.97 under the NYLL for the

period between April 9, 2011 and June 1, 2015.  This is in addition to the $50,457.44 in

liquidated damages awarded under the FLSA.  As described above, plaintiff Hernandez is

entitled to $41,912.73[26] in unpaid overtime and spread of hours wages for the period between

April 9, 2011 and June 1, 2015; accordingly, he is entitled to an additional $41,912.73 in

liquidated damages under the NYLL for this period.

---

[25]This figure represents the sum of:  (1) the $772.69 owed to Garcia in unpaid overtime wages for the period between April 9, 2011 and April 30, 2011; (2) the $9,622.50 owed in unpaid overtime wages for the period between May 1, 2011 and April 22, 2012; (3) the $10,238.34 owed in unpaid overtime wages for the period between April 23, 2012 and December 30, 2013; (4) the $6,673.92 owed in unpaid overtime wages for the period between December 31, 2013 and December 30, 2014; (5) the $2,889.02 owed in unpaid overtime wages for the period between December 31, 2014 and June 1, 2015; (6) the $7,228.25 owed to Garcia in unpaid spread of hours wages for the period between April 9, 2011 and December 30, 2013; (7) the $2,920.00 owed in unpaid spread of hours wages for the period between December 31, 2013 and December 30, 2014; and (8) the $1,262.25 owed in unpaid spread of hours wages for the period between December 31, 2014 and June 1, 2015.

[26]This figure represents the sum of:  (1) the $419.00 owed to Hernandez in unpaid overtime wages for the period between April 9, 2011 and April 30, 2011; (2) the $7,045.05 owed in unpaid overtime wages for the period between May 1, 2011 and April 22, 2012; (3) the $7,950.13 owed in unpaid overtime wages for the period between April 23, 2012 and May 31, 2013; (4) the $15,088.05 owed in unpaid overtime wages for the period between June 1, 2013 and June 1, 2015; (5) the $7,228.25 owed to Hernandez in unpaid spread of hours wages for the period between April 9, 2011 and December 30, 2013; (6) the $2,920.00 owed in unpaid spread of hours wages for the period between December 31, 2013 and December 30, 2014; and (7) the $1,262.25 owed in unpaid spread of hours wages for the period between December 31, 2014 and June 1, 2015.

Thus, in total, Garcia is owed $50,457.44 in liquidated damages under the FLSA and $49,178.92 in liquidated damages under the NYLL,[27] for a total of $99,636.36 in liquidated damages. Hernandez is entitled to an award of liquidated damages of $23,038.18 under the FLSA and $46,616.48 in liquidated damages under the NYLL,[28] for a total of $66,654.65 in liquidated damages.

Accordingly, it is respectfully recommended that plaintiff Garcia receive a total award of $99,636.36 in liquidated damages, and that plaintiff Hernandez receive $66,654.65 in liquidated damages.

### 7. Prejudgment Interest

Finally, plaintiffs seek to recover prejudgment interest on all damages awarded under the NYLL, calculated at a rate of 9% per annum pursuant to New York law. See N.Y.C.P.L.R. § 5004. The Second Circuit has held that, as liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL. Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999). Where plaintiffs receive damages under both the FLSA and the NYLL, prejudgment interest accrues on any amounts for which liquidated damages are not awarded under the FLSA; pre-judgment interest may not be awarded under the NYLL in addition to liquidated damages that are awarded

---

[27]This figure represents the sum of: (1) the $7,571.95 in liquidated damages under the NYLL for the period between April 23, 2009 and April 8, 2011; and (2) the $41,606.97 in liquidated damages under the NYLL for the period between April 9, 2011 and June 1, 2015.

[28]This figure represents the sum of: (1) the $4,703.75 in liquidated damages under the NYLL for the period between April 23, 2009 and April 8, 2011; and (2) the $41,912.73 in liquidated damages under the NYLL for the period between April 9, 2011 and June 1, 2015.

for violations of the FLSA.  See Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011).

Accordingly, plaintiffs are only entitled to prejudgment interest on any damages incurred solely under the NYLL.  These include:  (1) Garcia's unpaid overtime wages that are owed for the period from April 23, 2009 to April 22, 2012; (2) Hernandez's unpaid overtime wages that are owed for the period from April 23, 2009 to April 22, 2012; (3) both plaintiffs' spread of hour wages for the period from April 23, 2009 to June 1, 2015; and (4) both plaintiffs' statutory wage notice damages under the NYLL.

Plaintiffs have not specified a date from which they seek prejudgment interest on their damages under the NYLL.  However, where, as here, violations of the NYLL occur over an extended period of time, courts calculate prejudgment interest from an intermediate date.  See, e.g., Wicaksono v. XYV 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011).  Given the various time periods involved for each of plaintiffs' claims, the Court has selected the following dates as accrual points for prejudgment interest: (1) October 22, 2010 for Garcia's unpaid overtime wages; (2) October 22, 2010 for Hernandez's unpaid overtime wages; (3) May 12, 2012 for both plaintiffs' unpaid spread of hours wages; and (4) July 5, 2011 for both plaintiffs' wage notice damages.  The amounts owed are calculated in Chart 5 below:

**Chart 5: Prejudgment Interest on NYLL Claims**

| Claim | Award | Per Diem Interest | Accrual Date | Days Between Accrual and R&R | Total Interest to Date of R&R |
|---|---|---|---|---|---|
| Garcia: Overtime Wages, 4/23/09 - 4/22/12 | $35,501.18 | $9.77 | 10/22/2010 | 1968 | $17,227.31 |
| Hernandez: Overtime Wages, 4/23/09 - 4/22/12 | $19,869.22 | $4.90 | 10/22/2010 | 1968 | $9,641.74 |
| Garcia: Spread of Hours, 4/23/09 - 6/1/15 | $16,592.30 | $4.09 | 5/12/2012 | 1400 | $5,727.75 |
| Hernandez: Spread of Hours, 4/23/09 - 6/1/15 | $16,592.30 | $4.09 | 5/12/2012 | 1400 | $5,727.75 |
| Garcia: Wage Notice, 4/9/11 - 10/1/11 | $2,500.00 | $0.62 | 7/5/2011 | 1712 | $1,055.34 |
| Hernandez: Wage Notice, 4/9/11 - 10/1/11 | $2,500.00 | $0.62 | 7/5/2011 | 1712 | $1,055.34 |

Thus the Court respectfully recommends that Garcia be awarded $24,010.41, and

Hernandez be awarded $16,424.84 in prejudgment interest to the date of this Report and

42

Recommendation.

### 8. Attorneys' Fees and Costs

Plaintiffs seek to recover an award of "reasonable attorney's fees and costs" (see Pls.'

Mem. at 12-19), pursuant to the applicable provisions of the FLSA and the NYLL. See 29

U.S.C. § 216(b); N.Y. Lab. L. § 663(1). In accordance with New York State Ass'n for Retarded

Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted a

declaration (the "Newhouse Declaration) and contemporaneous billing records, setting forth the

dates and amount of time during which services were rendered, the hourly rate at which the

services were charged, along with the name of the attorney performing the work and a

description of services performed. (See Newhouse Decl., Ex. J). Plaintiffs' counsel has also

submitted a bill of costs incurred in connection with the instant action. (Id.)

### a. Attorneys' Fees

Courts employ the "lodestar" method in calculating reasonable attorneys' fees,

multiplying the number of hours reasonably spent by counsel on the matter by a reasonable

hourly rate. See Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North

R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n

v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV

5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002).

Although there is a "strong presumption that this amount represents a reasonable fee," the

resulting lodestar figure may be adjusted based on certain other factors. Cowan v. Ernest

Codelia, P.C., 2001 WL 30501 at \*7; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

### i. Reasonable Hourly Rate

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 183. To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. In Arbor Hill, the Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases . . . .

Id. at 187 n.3 (citation omitted). A number of courts within the Second Circuit have applied these factors when awarding attorney's fees. See, e.g., Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at \*7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at \*3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise
> and capacity of the client's other counsel (if any), the resources
> required to prosecute the case effectively . . ., the timing demands
> of the case, whether the attorney might have an interest
> (independent of that of his client) in achieving the ends of the
> litigation or might initiate the representation himself, whether the
> attorney might have initially acted pro bono . . ., and other returns
> (such as reputation, etc.) the attorney might expect from the
> representation

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 184; see also

Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May

8, 2007).  In awarding attorney's fees, the Court is guided by the fact that default actions are

relatively simple legal matters, while taking into account the attorney's degree of skill and the

Court's own experience dealing with similar claims.

In this case, plaintiffs were represented by Virginia & Ambinder  LLP (the "Firm").

Plaintiffs seek:  (1) an hourly rate of $395.00 for the work of Leonor Coyle, Esq., a senior

associate in the Firm's wage and hour practice; (2) an hourly rate of $250.00 for the work of Jack

Newhouse, Esq., a fourth-year associate at the Firm; (3) an hourly rate of $250.00 for the work of

Jonathan Roffe, a second-year associate at the Firm;  and (4) an hourly rate of $125.00 for the

work performed by assorted other individuals, whom the Court has assumed are paralegals.[29]

---

[29]The billing records provided list the following individuals as billing at an hourly rate of
$125.00:  Marta Nadgorska, Christina Isnardi, Ines Cruz, Izabela Gardocka, Alanna Sakovits, and
Konstancja Maleszynska.  Having reviewed the various tasks performed by these six individuals,
the Court believes these individuals to be paralegals or other litigation support staff.  The Court's
conclusion is bolstered by the fact that the section of the Newhouse Declaration addressing the
identities of all individuals involved in the case seems to be missing six paragraphs between
paragraph 27 and paragraph 34.  Confusingly, however, these six individuals are listed on the
billing records under the section marked "Attorney Time."

(Newhouse Decl. ¶¶ 25-27; Newhouse Decl. Ex. J).

Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with FLSA and NYLL cases, the Court finds that the rate of $395.00 per hour for the work of Ms. Coyle, a senior associate with almost ten years of experience, is on the higher end of the spectrum of rates generally awarded to partners. See, e.g., Apolinario v. Luis Angie Deli Grocery Inc., No. 14 CV 2328, 2015 WL 4522984, at *3 (S.D.N.Y. July 27, 2015) (noting that "courts in this district have awarded rates between $350 and $450 per hour for partners with significant employment litigation experience"); Bosoro v. American Comprehensive Healthcare Med. Grp., No. 14 CV 1099, 2015 WL 5676679, at *9 (E.D.N.Y. Aug. 31, 2015), report and recommendation adopted, 2015 WL 5686481 (Sept. 25, 2015) (stating that "prevailing hourly rates in the Eastern District of New York [are] between $350 and $400 for law firm partners").  Considering these precedents, and in light of the relatively straightforward nature of Ms. Coyle's involvement in this action,[30] the Court finds that a reasonable fee for Ms. Coyle's work is $300.00 per hour.

The Court similarly finds the proposed $250.00 hourly rate requested for the work of Mr. Newhouse and Mr. Roffe to be high, given the prevailing rates in this district for associates with comparable  experience. See, e.g., Spain v. Kinder Stuff 201 LLC, No. 14 CV 2058, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (finding a reasonable hourly rate for a fourth-year associate to be $200.00); La Barbera v. VLF11 Mgmt. Corp., No. 08 CV 2615, 2012 WL 1576109, at *7 (E.D.N.Y. Apr. 3, 2012), report and recommendation adopted, 2012 WL 1576114

---

[30]From the billing records, it appears that Ms. Coyle was primarily involved in initial meetings with the clients and in drafting the Complaint.

46

(May 4, 2012) (awarding rate of $215 per hour for sixth year associate with three years of relevant practice experience); Trustees of the Rd. Carriers 707 Welfare Fund v. Goldberg, No. 08 CV 884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009) (awarding $250 per hour for senior associate with seven years of relevant practice experience); Trustees of Local 531 Pension Plan v. Corner Distribs., Inc., No. 07 CV 529, 2008 WL 2687085, at*8 (E.D.N.Y. July 8, 2008) (awarding rates between $200 and $250 for seventh and eighth year associates).

Given that this case presented a relatively straightforward default judgment, without significant motion practice or procedural complexity, the Court finds that a downward adjustment is warranted. Accordingly, the Court finds that a reasonable hourly rate for the work of Mr. Newhouse and Mr. Roffe is $225.00.

Finally, the $125.00 hourly rate for litigation support staff is also significantly higher than rates traditionally awarded in this district. See, e.g., Gunawan v. Sushi Sake Restaurant, 897 F. Supp. 2d at 95 (awarding paralegals fees at a rate of $75 per hour); Ferrara v. PI Trucking Corp., No. 11 CV 0661, 2011 WL 7091562, at *4 (E.D.N.Y. Dec. 20, 2011) (awarding hourly rate of $90 for the work of a paralegal); Finkel v. Alltek Sec. Sys. Group, Inc., No. 10 CV 4487, 2011 WL 4543498, at *10 (E.D.N.Y. Aug. 26, 2011), report and recommendation adopted as modified, 2011 WL 4543495 (E.D.N.Y. Sept. 29, 2011) (approving hourly rate of $80-$90 for work performed by paralegal). Accordingly, the Court recommends that plaintiffs be compensated at the rate of $90.00 per hour for the work of litigation support professionals in connection with this action.

ii. Reasonable Number of Hours

The next step in awarding attorney's fees is determining the reasonableness of the hours

expended by counsel. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008

WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007).  In reviewing a fee application, the court "should

exclude excessive, redundant or otherwise unnecessary hours."  Bliven v. Hunt, 579 F.3d 204,

213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)).  If the

court finds "that some of the time was not reasonably necessary . . . it should reduce the time for

which compensation is awarded accordingly."  Louis Vuitton Malletier, S.A. v. LY USA, Inc.,

676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of New York, No. 12 CV 242, 2013

WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees because the fees requested for

responding to motion papers were "excessive"); Jemine v. Dennis, 901 F. Supp. 2d 365, 393

(E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality and complexity of the

submissions and calculations" did not reflect the hours expended); Ehrlich v. Royal Oak Fin.

Servs., No. 12 CV 3551, 2012 WL 5438942, at *3-4 (E.D.N.Y. Nov. 7, 2012) (reducing

attorney's fees because the attorney's litigation of the suit made apparent his "lack of experience"

and for duplicative entries); Quinn v. Nassau Cnty. Police Dep't, 75 F. Supp. 2d 74, 78

(E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and

redundant time); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding

that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led

to duplication of work," and deducting 40% of plaintiffs' lawyer's hours).

Rather than itemizing individual entries as excessive, the court may make an

"across-the-board reduction, or percentage cut, in the amount of hours."  T.S. Haulers, Inc. v.

48

Cardinale, No. 09 CV 451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010)).  Similarly, courts routinely apply across-the-board reductions for vague entries.  See, e.g., Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (affirming district court's 20% reduction in attorneys' fees for "vagueness, inconsistencies, and other deficiencies in the billing records"); Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *4 (E.D.N.Y. Mar. 19, 2013) (reducing attorney's fees by 10% due to the "vagueness and incompleteness" of some of the entries); Tucker v. Mukasey, No. 03 CV 3106, 2008 WL 2544504, at *2 (S.D.N.Y. June 20, 2008) (reducing fees by 30% in part because although some entries were detailed, others were vaguely worded or inconsistent); Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 396-97 (S.D.N.Y. 2000) (concluding that "the vagueness of some of the time records prevents the Court from determining why plaintiffs were required to expend so many hours on these tasks" and accounting for this factor by reducing fees by 15%); Cabrera v. Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994).

As noted above, the Firm has submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, and the names of the individuals who provided these services, along with a description of services performed.  In total, Ms. Coyle billed 9.4 hours of work, Mr. Newhouse billed 7.3 hours of work, Mr. Roffe billed 14.0 hours of work, and the litigation support staff and paralegals collectively billed 16.2 hours of work.  (See Newhouse Decl., Ex. J at 3).

Having reviewed the entries in the documents provided, the Court finds that the amount of time billed is not objectively unreasonable, particularly in light of the need for translation to communicate with the plaintiffs, questions with respect to the proper address for service, and other concerns.  As such, the Court finds no need to reduce the hours for which plaintiffs seek fees.

In light of the rates discussed above, therefore, the Court respectfully recommends that fees be awarded as following:  (1) $2,820.00 for the 9.4 hours of work performed by Ms. Coyle, at an hourly rate of $300.00; (2) $1,642.50 for the 7.3 hours of work performed by Mr. Newhouse, at an hourly rate of $225.00; (3) $3,150.00 for the 14 hours of work conducted by Mr. Roffe, at an hourly rate of $225.00; and (4) $1,458.00 for the 16.2 hours of work done by all paralegals and litigation support specialists, at an hourly rate of $90.00.  This amounts to a total award of $9,070.50 in attorneys' fees.

### b.  Costs

Plaintiffs have requested an award of $655.74 in costs, representing:  (1) $400.00 for the filing fee in this district; (2) a total of $245.00 for service of process upon all defendants; (3) $6.94 for research fees; and (4) $3.80 in PACER fees.  (Newhouse Decl. Ex. J at 2-3).  Plaintiffs have not, however, provided any supporting documentation to establish their right to these costs, and thus the Court has no basis for evaluating the reasonableness of these requests.  Cf. Gunawan v. Sushi Sake Restaurant, 897 F. Supp. 2d at 96 (declining to award costs where plaintiff had not provided any documentation in support thereof).  However, the Court takes judicial notice of the filing fee in this district.  See Phillip Morris USA, Inc. v. Jackson, 826 F. Supp. 2d 448, 453

50

(E.D.N.Y. 2011) (taking judicial notice of the filing fee for this court); <u>Joe Hand Promotions, Inc.</u>

<u>v. Elmore</u>, No. 11 CV 3761, 2013 WL 2352855 at *12 (E.D.N.Y. May 29, 2013) (same).

Accordingly, the Court respectfully recommends that plaintiffs be awarded $400.00 in

costs.


<u>CONCLUSION</u>

In light of the foregoing, the Court respectfully recommends that plaintiffs be awarded

damages in the following amounts:

(1) $30,656.16 in unpaid minimum wages under the FLSA to plaintiff Garcia

(2) $55,302.46 in unpaid overtime to plaintiff Garcia

(3) $44,135.44 in unpaid overtime wages to plaintiff Hernandez

(4) $16,592.30 to each plaintiff in unpaid spread of hours wages;

(5) $2,500.00 to each plaintiff for violations of the wage notice provisions of the NYLL;

(5) $99,636.36 in liquidated damages to plaintiff Garcia;

(6) $66,654.66 in liquidated damages to plaintiff Hernandez;

(7) $24,010.41 in prejudgment interest, to the date of this Report and Recommendation,

to plaintiff Garcia;

(8) $16,424.84 in prejudgment interest, to the date of this Report and Recommendation,

to plaintiff Hernandez; and

(9) $9,470.50 in attorneys' fees and costs.

In total, therefore, the Court respectfully recommends that defendants Chirping Chicken

NYC, Inc., Chirping Chicken USA, Inc., and Ramji Dass be held jointly and severally liable for

$228,697.69 in damages and interest owed to plaintiff Garcia, $146,307.24 in damages and interest owed to plaintiff Hernandez, and for attorneys' fees and costs of $9,470.50.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiffs are directed to serve a copy of this Order promptly by certified mail, return receipt requested, on defendants and to provide the Court with copies of the return receipts.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      March 11, 2016

/s/ Cheryl Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

52